### J. S. BLACK v. THE STATE.

No. 4114.    Decided June 7, 1916.

**1.—Theft—Husband and Wife—Separate Property.**

Where the information alleged the stolen property to be in the husband and the proof shows that it was the separate property of the wife but the husband had possession and control thereof, there was no variance.

**2.—Same—Argument of Counsel.**

Where, upon trial of theft, the county attorney in his argument went outside of the record and used highly improper and inflammatory argument in his closing address, the same was reversible error.

**3.—Same—Original Taking—Statutes Construed—Charge of Court.**

Where, upon trial of theft, the evidence raised the issue that the defendant obtained possession of the alleged stolen property with the consent of the owner thereof, but subsequently appropriated it, this would not be theft as alleged under the general statute, and the court should have charged the jury informing them of the proper distinction between the general statute of the theft and that of fraudulent conversion when legally obtained.

Appeal from the County Court of Montague. Tried below before the Hon. Homer B. Latham.

Appeal from a conviction of theft of a lap robe of the value of $12; penalty, a fine of $25 and thirty days confinement in the county jail. The opinion states the case.

*John Speer,* for appellant.—Upon question of court's charge and consent: Blair v. State, 9 S. W. Rep., 890; Miles v. State, 108 S. W. Rep., 378; Ward v. State, 136 S. W. Rep., 48.

On question of argument and conduct of counsel: Clements v. State, 153 S. W. Rep., 1137; Shed v. State, 153 S. W. Rep., 125; Vick v. State, 159 S. W. Rep., 50; Dunn v. State, 161 S. W. Rep., 467; Little v. State, 178 S. W. Rep., 326; Bullington v. State, 180 S. W. Rep., 679; Brown v. State, 162 S. W. Rep., 339.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of stealing a lap robe from C. E. Quillen, his punishment being assessed at a fine of $25 and thirty days imprisonment in the county jail.

The evidence shows the lap robe was the separate property of Mrs. C. E. Quillen. It was in a house on the place where the Quillens resided as their home, and was taken from that house. The contention is made that inasmuch as it was the separate property of the wife, therefore the pleadings should have charged it was in her possession and not in her husband's, therefore there was a variance in the proof and the allegation. Possibly it may have been sufficient to charge it in the possession of the wife, but it certainly could be charged in possession of the husband. He was living on the place and was head of the family. Separate property of the wife, as a rule, is under the control and management of the husband. There may be exceptions to that statement, but that is the general rule, especially as applicable to possession. We do not think there is anything in that proposition.

There are three bills of exception reserved to the action of the county attorney. One of these shows that he asked the witness Shelton while testifying if he did not steal four quarts of whisky from C. E. Quillen while he was working on his place. Prompt objection was interposed, but the witness answered before the court ruled, that he had not stolen any whisky from him. The objection was sustained by the court and the jury instructed to disregard it. Another bill recites that the county attorney asked defendant while testifying for himself, if he had heard the State's witness Charlie Hart testify in this case in which he said he stood beside defendant's car at a given time and asked defendant if it was not a fact that the said Charlie Hart had testified to a lie in this case. The defendant very promptly answered that he did not care what the county attorney termed it, his testimony was not true, defendant objecting to the question and answer for various and sundry reasons. Among other things he stated that this was done by the county attorney knowing that this would not be permitted to stand before the jury and for the sole purpose of getting such inflammatory testimony into the case, and for the further purpose of getting his individual view before the jury in a manner not prescribed by law, for he had heard said witness, Charlie Hart, testify as above stated. The court qualified this as he did the previous bill, by stating that the jury was charged not to consider either the question or answer. It is a difficult matter sometimes to say just how far improper questions and answers withdrawn may affect the jury, but without passing here upon these matters, as they will not occur upon another trial, we hope that the prosecution will confine their course of conduct to legitimate matters and not undertake to put into the case things that ought not to be for the purpose of influencing the jury or such as are calculated to do so against the defendant when the matter is illegal. Much has been written along this line, and the writer is of the opinion that in such instances the error, if material, ought to be reversible.

Another bill of exceptions recites that the county attorney in his closing argument had discussed various and sundry phases of the testimony, and mentioned the fact that he himself had taken the stand and testified in behalf of the State to impeach the truth and veracity of the defendant in the community in which he resided, and said with a great deal of vehemence and positiveness that the reason he had taken the stand and testified he had sat there during the trial and watched the defendant make out Mrs. Quillen a liar when he knew the defendant was as guilty as a dog. Appellant urged various and sundry objections to this; that it was outside the record, not borne out by the testimony, that the county attorney himself had been upon the witness stand and testified, and did not offer to testify as to the merits of the case, and that his statement that he himself knew the defendant to be guilty as a dog was highly improper, not supported by the testimony, was highly inflammatory, that it was insulting and could not be resented by defendant except to infringe the rules of the court and showed disrespect to the court, and calculated to and did cause said jurors to believe the statement of the county attorney rather than the testimony of the witnesses, and because of said facts some of said jurors were desirous of giving defendant a very heavy penalty as jail sentence and were only prevented by other jurors who were less excited and inflamed over said statement, but who were forced to agree to a conviction to appease the wrath of those who had been influenced by said statements of said county attorney. The court signs this bill with the explanation that the argument was withdrawn from the jury by an oral charge at the time.

Another bill recites that the county attorney, in making his closing argument, dramatically appealed to the prejudices and bias of the jurors for a conviction, and said, in substance, if not in precise words, that if they wanted to foster crime in Montague County, and cover up offenses brought to light by the county attorney's department, they could return a verdict of not guilty in this case, but that in the event they did so, to please write in their verdict when they returned it, upon what grounds they did it, and why they so returned a verdict of not guilty, and that in the event they did so, to never complain to him again that crime was prevalent in the county, and that the citizenship would not convict criminals, to which improper argument various and sundry objections were urged. There are other matters stated in the same bill. We are of opinion the last two bills of exception are fatal to this conviction. There have been so many cases written, so many reversals occurred on similar matters and questions, we deem it unnecessary here to refer to those cases. This was such error that we can not afford to give it the sanction of this court.

The theory of the State was that appellant, who was working as a painter on the property of the Quillens, committed the theft of the lap robe and took it away for the purpose of appropriating it. Appellant's contention was supported by the testimony of himself and an-

other witness, that he was working for the Quillens as stated at Nocona, in Montague County, and being without a coat, it having turned cold he borrowed a coat and the lap robe from Mrs. Quillen to use in returning to his home in Bowie, in the same county. This was the issue in the case. It is not the purpose here to go into detail. The court charged the jury if he borrowed the lap robe from Mrs. Quillen, or if there was a reasonable doubt of it, they should acquit. There were some exceptions to the court's charge, and requested instructions which were refused which perhaps more nearly presented the question. Of course if appellant borrowed the lap robe there could have been no theft at the time he obtained possession of it. There is some testimony showing that he kept the lap robe for some time after obtaining it. He explains this by stating that the weather was cold and he did not return to Nocona to work, and gave it to another party with money to pay for its return through proper channels to Mrs. Quillen at Nocona, but this party did not do so, and he did not know this until the day he went to Nocona in his car and took the lap robe with him. There seems to have been a match game of tennis or base ball between the Nocona team and that from the town of Bowie, the excitement being rather acute. Mrs. Quillen on that day obtained the robe from him. He told her at the time she claimed it that it was hers, and that it did not belong to him. These matters are briefly stated. We are of opinion that upon another trial, in order to present these matters more accurately and definitely under the close questions made, the jury should be instructed that if he obtained possession of the lap robe from Mrs. Quillen and took it under the idea that he had a right to use it for the time, that his failure to return it would not constitute theft. In other words, if he obtained possession lawfully with consent of the owner or party having a right to give consent, but subsequently appropriated it, it would not be theft under the general statute. Theft under the general statute consists of the intention to appropriate at the time of the taking. Any lawful possession would not be theft under that statute. We have another statute which was passed to avoid the weakness of the general statute by making the subsequent fraudulent conversion of property when legally obtained a violation of the law. These statutes make a distinction which should be observed whenever the facts raise these different issues, and the jury should be properly so instructed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*